We'll call the September 24, 2019 docket and begin with 516-0359, En Ray, The Matter of Pamela M. Mr. James? Yes. I must excuse me, this is my first time to do an oral argument here, so. Okay, well state your name, for the record, the microphones do not amplify, they just record. Well, I am Alan James, may it please the court. I'm Alan James, and I am with the Illinois Guardship and Advocacy Commission, Legal Advocacy Service, and I am representing the appellate Pamela M. We are appealing the involuntary medication case out of Union County. There were three issues brought before the court, one of those issues being mootness. Ms. Shanahan consented to the case, to the mootness argument, so therefore I'll address the remaining two arguments to the court, which is the failure to provide Pamela's guardian with a copy of the petition, along with the notice of place and time of hearing. And which I believe for this court would be an issue of personal impression. And two, the failure to provide clear and convincing evidence of deterioration of Pamela's ability to function. Essentially, picking up where the state argued in their required brief, they argued it was Pamela's responsibility to raise this issue, or the failure to notify her guardian at the time of hearing. Our opinion is that's nothing other than an attempt to change the burden to that of the responder. The code in section 107.1 requires the petitioner to deliver a copy of the petition to the guardian no later than three days prior to the hearing. It's the petitioner's responsibility to accomplish this task, which ultimately falls on the state's attorney. In section 303.101 of the code, it states that the state's attorney, in terms of the people of the state of Illinois, attend the proceedings and to ensure the petition's reports and orders are properly prepared. Mr. James, wasn't there an allegation in the petition that the guardian agreed with the petition? I don't know about an allegation in the petition. I don't recall that. I recall there was some testimony to that. So the doctor testified that the guardian was in agreement? Not to the petition, to the fact that Pamela needed medication. And I'm not even sure he knew that the guardian needed what medication, just that she needed to be medicated, because her history was she'd been on the medication in the past, gone off, and was now back in the facility. As a matter of fact, she'd done that two or three times prior. She had the medication the doctor was requesting. There were four main medications and several alternatives. There were those four main medications, Haldol and Cogentin. Haldol for the mental, which directly goes to the psychosis, and Cogentin to the side effects of that medication. That was her primary medication she'd had before. That's what she was taking even at the time of the hearing. She was voluntarily in the hospital and voluntarily already taking the medication as prescribed at the time of the hearing. Mr. James, in follow-up to Justice Moore's question, there was no, the respondent, Pamela Ann, I mean, this woman was fairly cognizant of her affairs in life. She knew she had a guardian, right? Yes. And at the hearing, she knew the guardian wasn't there. Yes. But never mentioned this until the appeal. We, and here I am, I've actually tried this case. We thought the guardian... You were counsel of records? Yes. So you never mentioned this until you came up here, so why didn't you make sure that the guardian was present? Kind of expected that question. I think that's what we were getting at here. Essentially, we didn't know. We thought the guardian knew about the hearing and just failed to show. We did not know that the guardian had not been noticed. So explain for all of us, what's the difference if he knew, if the husband knew and didn't show up, or if he didn't know? Either way, he wasn't there. The difference here is if he had known and served, he would have had the opportunity to be there. Now, if he hadn't shown, but he'd been served, we had an argument. That was his choice. As you conceded, I think that Justice Moore asked you, he felt she needed some medication. Is he a doctor? No. So he wouldn't have known all these medications. He believes she needed some medication. Yeah, all I know is what you know from the doctor's testimony. Pamela, I have regular contact with. She lives in Ann and she calls me. But I have never met her husband. I don't know him. I don't know what he knows. It's not a record, but she went to get a divorce and left with him as her guardian. So that's the history behind this relationship. But he has regular contact. He lives in Will County. She lives in Union County. But he'd come down once a month to see her. So while he wasn't here for the hearing, she thought he would be there. She expected him to be there. We didn't know he wasn't noticed until we got the record and saw that he had not received notice of the hearing. So that was a surprise to us. And then also, so you know, at that time, no one, the way the facility operated, the information for the medication, all the handouts that goes to the different medications that are attached to the petition, no one received those until the petition was on file. So the guardian would not have had that information, which in my reply brief I talked about the Beverly B case and how I talked about the importance where we step with section 102, which is voluntary admission of medication. You try that first. Then you go to 107 if you need to do emergency medications. That's there before you get to 107.1. Based on the procedures, he would not have received any of that information at the 102 step for voluntary medication. Nothing was presented to anyone until the petition was on file and the petition was presented. So the guardian would not have had any notice of what the medications were or what the doctor was talking about. And I don't know from the record exactly what the guardian knew, other than he knew she had been on medication before and needed medication. Had he received notice, he would have had that information if he wanted to interject and say, she's always been on Haldol, Uncle Jim, and he could have done so. He would have had that opportunity. And as it was, that was the trip she was taking. She had problems with the Ativan, which is a PRN that the doctor testified he wasn't getting. And she had problems with Lamictal, which is a new medication, but she was concerned about the Steven Johnson syndrome, which it can cause, which is pretty severe. It can be deadly. But the doctor said he didn't really intend to give it to her. Yes, ma'am. Well, under the act under which you're proceeding, the failure to object to the guardian not being there, do you agree that the standard of review for us is the plain error doctrine? Or is there another standard of review? I think it could be. I may look just briefly here. It could be plain error. Generally, my overall thing is it's just a duty on the state that even if it's just an error on the part of the state to do this, it's still a procedural right that this be done. It's important that the guardian be involved in these procedures. To me, it's along the lines of the guardian wants to sell real estate or the reward was to get married or sometimes even placement. They have to go to court to get court oversight. Here, it's kind of similar to that. The guardian can't put a warrant in a mental hesitation against their will. They have to go to court to do so. And there's procedures for that. If it's just a plain error and Adelie just made a mistake, it didn't matter, then okay. But at what point? Plain error is a doctrine that's just not a mistake. I mean, you have to. I'm oversimplifying, I'm sure. I'm sorry. Let's go to the second issue, if you don't mind. The clear and convincing evidence of the deteriorating ability to function. Is that the second? Yes. On that one. I wanted to move you there only because you allowed it so little time. But you'll have some time for rebuttal. When I come back for rebuttal, I'll give you an answer. Okay, very good. Thank you. Much better than plain error doctrine. Well, it goes fast, I know. It's Shanahan. May I please court? Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Before I begin, I'd like to answer a couple of questions from the bench. Justice Moore, you asked about whether there's something in the record that indicated that the husband guardian agreed about medication. And it was in he was referenced in the petition for involuntary medication. And in an addendum to that petition, Dr. Arora stated, and here I'm quoting that respondent's legal guardian, Tony Marcos, says that respondent has had court-ordered medicine over objection in the past for her mental illness. He agrees that Pamela should have court-ordered meds over objection with a long-acting medication. So that is in the petition. And I cited to this court, in re Todd Kaye, in which the court took into consideration the fact that he had been contacted about the treatment. Was there follow-up testimony about that at the hearing? No. And so then I will move on, Justice Cates, to your question about the standard of review. Our Supreme Court in Renau indicated that even in mental health cases, failure to raise an issue in the trial court generally results in a waiver of the issue on appeal. And this court is not required to reverse due to noncompliance with the code's requirements if the error is harmless. So it's a plain error, and I think we need to look at the state agrees that this guardian should have been notified. He wasn't. At least the record doesn't indicate. Is that the only reason the state concedes it's not moved? I mean, why are you saying that this issue is of such public interest that we should rule on it because of both issues raised or one issue? I think the first issue, this issue, this guardianship issue, is certainly sort of a unique issue to mental health. Certainly one I've run into before, and I've done quite a few of these. And that's, again, the guardian should have been notified. And it's not a question that's come up before, so I think it does come into the mootness exceptions in that we do need to guide judges and prosecutors and counsel for these people. For example, counsel for the respondent says, well, we didn't know he hadn't been notified. But he's not invisible. They knew he wasn't there that day. I mean, regardless of what you knew before you walked into the courtroom, when you sit down and he's not there, that's time to say, has the guardian been notified? That's exactly why I asked you about the mootness issue. It was in the petition we established that the guardian visits at counsel, and now it's for us to decide whether it's harmless or not. That doesn't seem a far jump from harmless to forfeiture. It's not. In fact, I just finished two this week. I think it would be hard-pressed to say that those cases are not moot. Honestly, I just have had never run into this guardianship issue before, and I think maybe we need to address it so that the parties involved will know how to address it in the future. So I'd like to move on. I always feel like one of the reasons for oral argument for an appellee is this isn't my oral reply brief. Counsel for the appellant always gets to reply to our answer brief, but now I get to reply to what they said in their reply brief. So I'd like to address, in the reply brief, Respondent claims that a guardian is allowed to consent to the administration of psychotropic medicine, provided the psychiatrist, the doctor, advises the guardian of the risks and benefits. And I disagree with that. That's on reply brief page 1. 102A5 says if the recipient is under guardianship and the guardianship is authorized to consent to the administration of psychotropic medication pursuant to subsection C of 2-107.1, then the physician can advise the guardian in writing and basically you can go from there. But then you need to look at 107C, which says notwithstanding any other provision of this section, a guardian may consent to the administration of psychotropic medication to a non-objecting recipient. We don't have a non-objecting recipient. The section immediately before that, B, is what's involved here, which says that a guardian may be authorized to consent to the administration of psychotropic medication to an objecting recipient only under the standards and procedures of subsection 107.1A-5. That means if a guardian wants involuntary administration of psychotropic medicine for his ward, he has to do exactly the same thing that a doctor would do, that this doctor did do. So he could not have the authority to consent to this. So honestly, I don't have a lot else to say that's not included in my brief. I think that I've established that the review is plain air. If you have any questions about Issue 2, because I don't get a rebuttal, I would be glad to answer them. Okay. Thank you so much. Mr. James, we're gone. I'd like to begin by saying thank you. I appreciate you asking the question. It was so much better than anything I had to say. And also, Ms. Shanahan and I agree, I may not have wrote it eloquently enough, but we agree on the guardians, the guardian may consent to the medication, but the ward still has to agree to take it. If they don't agree, then we move forward in the involuntary, if that's necessary for the involuntary proceeding. On the plain air doctrine, I was trying to get that, and I just couldn't find it quickly. I addressed that in my brief out in Marisalva P. Essentially, and I'll shorthand that, is that, yes, it exists, but strict compliance with that is not necessary according to the Supreme Court in Marisalva P. And excusing noncompliance due to lack of any prejudice may emasculate those provisions that were meant to safeguard a mental health patient's liberty interest, and that's what we're talking about here. We don't want to emasculate the mental health code, which is there to protect the liberty interest of our clients. And then finally, to get to your question of justice case that you were asking me, I want to say this as quickly as I can, is that I want to apologize. When Shanahan went to the court, there was a case, Tory G., that I put in my reply brief, and I wondered why did I not have that in my main brief? All the issues, everything out of it was discussed, but I think we tailored everything to Deborah B. But Tory G. is a case that's essentially on point concerning this, regardless of what the trial court meant in their statements. And why is it on point? Because in that case, they talked about a person who was willing to take the medication, and they wouldn't allow them to and took them to court for an involuntary medication hearing. And they said, you must attempt the least restrictive services first, or hear the code in 107.1, and try those and show those to be insufficient before you come to court. Here, Pamela M. was doing the least restrictive. She was taking Halodol and Cogentin as prescribed. The doctor first even showed that that wasn't sufficient before you petition to come to court for additional medication. They didn't do that. They didn't show that in their argument. And Deborah B. addresses a lot of those issues, but Tory G. just goes right to it. And I'm sure what we were doing was Deborah B. was out of this district, Tory G. is out of the first district. But still, I think Tory G. is the important case, and that case essentially makes it so, if that had been followed in this hearing, we wouldn't even be here. And just for the record, I note that in your reply brief, you don't have an index of authorities. So recognizing that this is your first time here, I would remind you that that would be very helpful. Thank you. I apologize for that. Okay. Is there anything else here? Yes. I appreciate your time in hearing this matter. Thank you. Okay. This matter will be taken under advisement, and the court will issue an order in due course.